UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTAULIC COMPANY, a New Jersey Corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALLIED RUBBER & GASKET CO., INC. d/b/a ARGCO, a California Corporation; TAIZHOU REALFLEX PIPETEC CO., LTD, a Peoples' Republic of China Corporation,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:17-cv-01006-BEN-JLB<br><br>**ORDER GRANTING MOTION FOR SIXTH EXTENSION OF TIME AND ORDERING SERVICE BY ELECTRONIC MEANS**<br><br>[Doc. 18] |

Before the Court is Plaintiff Victaulic Company's ("Victaulic" or "Plaintiff") Motion for a Sixth Extension of Time to Serve Summons and Complaint on Defendant Taizhou Realflex Pipetec Co. Ltd. ("Realflex" or "Defendant"). For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff filed its Complaint for patent infringement against Defendant Realflex on May 16, 2017. (Doc. No. 1.) Realflex is a corporation existing under the laws of China, with its principal place of business in Taizhou City, Zhejiang Province, People's

Republic of China.  (Doc. No. 18-1 at 2.)  Crowe Foreign Services[1] was engaged by Plaintiff to ensure Defendant was served in accordance with the Hague Service Convention.[2]  (Doc. No. 18 at 2.)  "The Hague Service Convention does not impose an obligatory time frame and no signatory nation is obligated under the Hague Service Convention to provide status with respect to service of documents in its possession and the China courts generally do not."[3]  (Doc. No. 18-6 ¶ 9.)  Ms. Celeste Ingalls'[4] (*Crowe Foreign Services representative*) affidavit supports this contention as it references the auto-reply she received in response to her request for a status update from the Chinese Central Authority.  It stated that the office was not fully operational and would not return to full operational status until March 2020.  (Doc. No. 18-1 at 2.)  Since service has not been effectuated on Defendant, Plaintiff now requests a sixth extension of time (*six-months*) to serve Defendant Realflex.  *Id*. at 5.

In support of its motion, Plaintiff attached the Declaration of Colin T. Kemp (*Counsel for Plaintiff*), the Affidavit of Celeste Ingalls, and other exhibits indicating service of foreign defendants in China can take more than two years.  (*Id.* at 4.)  Plaintiff

---

[1]   Alan H. Crowe & Associates, Inc. dba Crowe Foreign Services is a service of process firm which specializes in legal service of process outside of the United States. (Doc. No. 18-6 ¶ 1.)

[2]   On July 13, 2017, Ms. Ingalls, forwarded to the Central Authority in China, the Summons and Complaint in this matter for service on Defendant.  (Doc. No. 18-1 at 2.)

[3]   "The Hague Service Convention does not impose an obligatory time frame and, although Ministry of Justice for China indicated their procedures are in the process of being streamlined, the turnaround time remains frustrating and unbending.  The current Hague service time in China has increased, exponentially, and Ministry of Justice for China issued a statement that service of process will take up to 2 years or more, with proofs of service being returned an average of 1 to 5 months after service occurs.  This means there is a wait window of 2 years with no interim information provided." (Doc. No. 18-6 ¶ 10.)

[4]   Ms. Celeste Ingalls has specialized in service of process in foreign countries for more than 24 years.  (Doc. No. 18-6 ¶ 1.)

also attached a recent report suggesting concern among the international law community that the Chinese Central Authority has "stopped executing US requests altogether." (*Id.*)

## II. DISCUSSION

District courts retain broad discretion to permit service-of-process extensions under Rule 4(m). *See Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003). In considering whether to grant an extension, "a district court may consider factors 'like the statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (quoting *Troxell v. Fedders of N. Am. Inc.*, 160 F.3d 381, 383 (9th Cir. 1998)).

Here, Plaintiff took steps to attempt to effectuate service within the 90 days proscribed by Rule 4(m) and Civil Local Rule 4.1(a). Specifically, on July 13, 2017, Plaintiff engaged Crowe Foreign Services to serve the Defendant with the Summons and Complaint in China. (*See* Doc. No. 18-1 at 4-5.) Despite Plaintiff's efforts, more than 34-months have passed, and the Defendant remains unserved.

Notwithstanding Plaintiff's inability to effectuate timely service, it is clear the delay is not attributable to Plaintiff, but rather stems from the Chinese Central Authority's slow-walk in facilitating the request. The Chinese Central Authority's reply to Ms. Ingalls request for a status update aptly illustrates this point. "On August 14, 2018, …, the Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete."[5] (Doc. No. 18-1 at 3.) Moreover, the current global COVID-19 pandemic has likely complicated service efforts in China and will undoubtably result in additional service delays in the future. Thus, it is clear the Plaintiff's request for an extension of time to serve the Defendant is necessary. Accordingly, the Plaintiff's Motion is Granted.

---

[5] "The Ministry of Justice in China also informed Ms. Ingalls that it had no update on the status of service because it had not yet heard from the Supreme People's Court of China." (Doc. No. 18-1 at 3.)

The Court further Orders that the facts of this case demonstrate alternative service under Rule 4(f)(3) is necessary. As noted above, we are in the midst of a massive global crisis. COVID-19 has radically altered life as we know it. A new lexicon has emerged in response to these changed conditions such that terms like "social distancing" and "flattening the curve" have become part of our everyday conversations. With that comes changes to the way we must do business so that matters like this case keep moving, rather than sitting stagnant as this case has for the past 34-months. Thus, the Court finds a change of approach is appropriate.

Rule 4(f) permits service on an individual, other than a minor, an incompetent person, or a person whose waiver has been filed, at a place not within any judicial district of the United States, by one of three means. Under Rule 4(f)(3), courts can order service through a variety of methods, "including publication, ordinary mail, mail to the defendants last known address, delivery to the defendant's attorney, telex, and most recently, email," provided here is no international agreement directly to the contrary. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). Multiple forms of alternative service at once are also permissible. *Id*. at 1017. Finally, to comport with due process, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Of the methods Rule 4(f) permits, it "does not denote any hierarchy or preference of one method of service over another." *Rio Properties,* 284 F.3d at 1015. Moreover, Federal Rule of Civil Procedure 4(h)(2) allows service of process upon a foreign corporation to be effected "in any manner prescribed for individuals by subdivision [4](f) except personal delivery."[6] Thus, service by alternative means is proper under Rule 4(f)(3) so long as it is

---

[6] Rule 4(f) authorizes several methods for service of process including, an "internationally agreed means," a method that is reasonably calculated to give notice.

(1) ordered by the court; (2) not prohibited by international agreement; and (3) reasonably calculated, under the circumstances, to apprise the party of the action.

Here, the first element of Rule 4(f)(3) is met because the Court is ordering alternative service on Defendant.

The second element of Rule 4(f)(3), the method of service is not prohibited by international agreement, is also met.[7]  Like the United States, the People's Republic of China is a signatory to the Hague Convention.  The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to service those documents by methods compatible with the internal laws of the receiving state.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988).  Service through a country's Central Authority is the principal means of service under the Hague Convention.  Plaintiff indicates it attempted service on Defendant Realflex via the relevant Chinese Authority.  However, due to issues within the Chinese government, discussed *supra*, service has yet to be effectuated.[8] (Doc. No. 18-1 at 2.)

It is true that "compliance with the Convention is mandatory in all cases to which it applies" *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 705, and that "a federal court would [thus] be prohibited from issuing a Rule 4(f)(3) order in contravention of … the Hague Convention," *Rio Properties, Inc.*, 284 F.3d at 1015 n. 4.  However, the Ninth Circuit has rejected the contention that Rule 4(f)(3) can only be utilized if other methods of service have failed or been shown to be unduly burdensome.  *See Rio Properties, Inc.*, 284 F.3d at 1016 ("[W]e disapprove of the statements in *Graval [ v. P.T. Bakrie & Bros.*,

---

Fed. R. Civ. P. 4(f).  Thus, service may be attained by using any one of the specified methods, as appropriate, to effectuate service on a defendant located abroad.

[7]  Rule 4(f)(1) expressly addresses service pursuant to the Hague Convention.  *See* Fed. R. Civ. P. 4(f)(1).

[8]  Plaintiff has undertaken diligent efforts for over two years to serve Defendant through the Hague Convention.  (Doc. No. 18-1 at 2.)

986 F. Supp. 1326 (C.D. Cal. 1996),] which would require attempted service by all feasible alternatives before service under Rule 4(f)(3) is allowed. Instead, we hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure"). Rather, it has held that service pursuant to Rule 4(f)(1), is not necessarily preferable to the manners of service permitted by Rule 4(f)(3). *See id.* ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)").

While being a party to the Hague Convention, China has objected to service under Article 10(A), which provides for service by "postal channels." Hague Conv. Art. 10(a), 20 U.S.T. 361. "Where a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternatives means of service that are not specifically referenced in Article [10]." *Shinde v. Nithyananda Found.*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (quoting *Gurung v. Malhortra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011)) (alterations in original). Although Article 10(a) references "postal channels," it does not mention service by email, online messaging system, or other electronic means. Thus, China's objection to service by "postal channels" does not prohibit service by "electronic means." For this reason, courts have held that the Hague Convention does not prohibit service by electronic means notwithstanding China's objection to service by "postal channels." *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017) ("China's objection to Article 10 does not prohibit the email service the Court ordered in the instant case."); *see also Facebook, Inc. v. Banana Ada, LLC*, No. C-11-3619, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (allowing email service of defendants located in countries that have objected to service via postal channels).

Therefore, the Court concludes that the Hague Convention, to the extent applicable under the circumstances, does not prohibit service on a Chinese company through

electronic means.  Because there is no international agreement prohibiting such service, service through online publication and other electronic means such as email are permissible alternatives under Rule 4(f)(3).

The third element of Rule 4(f)(3), requiring that service be reasonably calculated to apprise Defendant of the litigation, will also be met.  In determining whether a plaintiff has exercised "reasonable diligence," the court examines the affidavit to see whether the Plaintiff "took those steps a reasonable person who truly desired to give notice would have taken under the circumstances."  *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 333 (1978).  The "reasonable diligence" requirement "denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney."

As discussed *supra*, Plaintiff engaged the services of Crowe Foreign Services, a firm specializing in service of process under the Hague Service Convention.  Ms. Ingalls, the representative assigned to facilitate said service has more than 24 years of specialized experience serving individuals/entities in foreign countries.[9]  (*See* Doc. No. 18-6 ¶ 1.)  Of note, Ms. Ingalls, at the invitation of the Hague Administration, participated in "a 'training' session, … to provide guidance to a foreign Central Authority and its courts on their practical obligations with respect to service under the provisions of the Hague Service Convention."  *Id*. ¶ 5.

Here, Ms. Ingalls, on July 13, 2017, "forwarded the Summons in a Civil Action, Complaint, Civil Cover Sheet, and Exhibits with Chinese translations, to the Central Authority in China to be served upon Taizhou Realflex Pipetec Co., Ltd. in accordance with the Hague Service Convention."  *Id*. ¶ 8.  Thereafter, Ms. Ingalls made numerous

---

[9]     Since 2003, Ms. Ingalls has "attended, at special invitation as a private expert, all Special Administrative Sessions of the Hague Conference in The Hague, Netherlands, at which each signatory country was represented by their respective Judicial Authorities to discuss the practical mechanics of, and problems encountered in dealing with, the Hague Service Convention as they apply to each country's laws and interpretations of the Convention and its obligations."  (Doc. No. 18-6 ¶ 4.)

attempts to determine the status of the service on the Defendant. For example, Ms. Ingalls received an email correspondence from the Ministry of Justice of China on August 14, 2018, in response to her request for a status update relating to service on Taizhou Realflex Pipetec Co., Ltd. The email stated that the Ministry of Justice had not received a reply from the Supreme People's Court of China. *See Id*. ¶ 11. Thereafter, on February 28, 2020, in response to an additional request for status, she received an auto-reply email from the Chinese Central Authority stating their offices were not in full operation. *See Id*. ¶ 12. As of March 9, 2020, she has not received any additional updates in response to her further requests for updates on the service of the Defendant. *Id*. It is clear, Ms. Ingalls and Plaintiff have exercised reasonable diligence in attempting to serve the Defendant in accordance with the Hague Service Convention guidelines.

In conclusion, the Court finds that service by electronic means and notice in an electronic publication is reasonably calculated to give the Defendant actual notice of the suit and an opportunity to respond should it choose to do so. *Rio Properties*, 284 F.3d at 1017.

Accordingly, the Plaintiff is Ordered to publish notice of the suit, in the Wall Street Journal - Asia edition (*electronic format*), to run for four (4) consecutive weeks, in the region containing Defendant's principal place of business: Taizhou City, Zhejiang Province, People's Republic of China.

Additionally, to supplement service by publication, Plaintiff shall also serve the Defendant with copies of the summons, Complaint, and all other associated documents and Chinese translations via the email address located on the Defendant's webpage under the "Contact Us" tab: info@realflex-cn.com.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED:**

1. Plaintiff's Sixth Motion for an Extension of Time to Serve Defendant is **GRANTED**. Plaintiff's shall have until **August 3, 2020** to serve Defendant;

2. Plaintiff shall serve the Defendant via publication in the Wall Street Journal - Asia edition (*electronic format*), to run for four (4) consecutive weeks, in the region containing Defendant's principal place of business: Taizhou City, Zhejiang Province, People's Republic of China;

3. Plaintiff shall also serve the Defendant with copies of the summons, Complaint, and all other associated documents and Chinese translations, via email at: info@realflex-cn.com.

**IT IS SO ORDERED.**

DATED: May 8, 2020

_____
**HON. ROGER T. BENITEZ**
United States District Judge